## *In re* TERRY.

### *(Circuit Court, N. D. California. February 1, 1889.)*

1. CONTEMPT—PUNISHMENT—COMMUTATION FOR GOOD BEHAVIOR.
    One undergoing imprisonment for contempt *is* not "a prisoner convicted of an offense against the laws of the United States," within the meaning of the act of Congress, March 3, 1875. (1 Supp. Rev. St. 184,) which allows to such a prisoner, confined "in any prison or penitentiary of any state or territory which has no system of commutation for its own prisoners," a deduction of five days in each calendar month during which no charge of misconduct has been sustained against him.

2. SAME.
    Besides, the act is not applicable to one confined in a county jail in California, which has a system of commutation for its own prisoners, though that system does not allow deductions for prisoners confined in jail.

3. SAME.
    Nor is such prisoner entitled to the credit under Rev. St. U. S. § 5544, which provides that "in other cases all prisoners now or hereafter confined in the jails or penitentiaries of any state, for offenses against the United States, shall be entitled to the same rule of credits for good behavior applicable to other prisoners in the same jail or penitentiary," as the California commutation act of March 14. 1881, relates only to state-prisons, and has no application to prisoners in county jails.

4. SAME.
    Even if the California act applied to prisoners in county jails, one imprisoned for the term of six months would not be entitled to a credit, as it provides that one entitled to credit "shall be allowed from his term, instead and in lieu of the credits heretofore allowed by law, a deduction of two months in each of the first two years," etc., and contains no credits for months or fractions of a year.

Order on W. E. Hale, Sheriff, to Show Cause.

On September 3, 1888, D. S. Terry was adjudged guilty of contempt, and to be imprisoned therefor for the term of six months in the Alameda county jail. 36 Fed. Rep. 419. He claimed credits, and the sheriff declared his intention to allow the credits, and discharge the prisoner on January 31, 1889. This coming to the knowledge of the United States attorney, that officer filed a petition stating the facts, and obtained an order upon the sheriff to show cause why he should not detain the prisoner in custody for the whole term prescribed in the judgment. The facts as stated in the petition being admitted, the question was whether the defendant was entitled to the credits claimed.

*J. C. Carey*, U. S. Dist. Atty.
*J. C. Martin* and *George W. Reed*, for Sheriff Hale.
Before SAWYER, Circuit Judge, and SABIN, District Judge.

SAWYER, J. D. S. Terry having been adjudged guilty of contempt, and to be imprisoned therefor, for the term of six months from September 3, 1888, now claims that, in consequence of good behavior, he is entitled to certain credits, which, if allowed, would entitle him to be discharged from further imprisonment. He claims credits under the act of congress of March 3, 1875, (1 Supp. Rev. St. 184,) which reads as follows:

"All prisoners who have been, or shall hereafter be, convicted of any offense against the laws of the United States, and confined, in execution of the judgment or sentence upon such conviction, in any prison or penitentiary of any state or territory which has no system of commutation for its own prisoners, shall have a deduction from their several terms of sentence of five days in each and every calendar month during which no charge of misconduct shall have been sustained against each severally, who shall be discharged at the expiration of his term of sentence less the time so deducted, and a certificate of the warden or keeper of such prison penitentiary of such deduction shall be entered on the warrant of commitment."

The first question that arises is, is Mr. Terry, adjudged guilty of contempt of court, a "prisoner convicted of any offense against the laws of the United States and confined, in execution of the judgment or sentence upon such conviction in any prison or penitentiary" of the state, within the meaning of this statute? It is freely conceded that a contempt is a violation of law, and is of a criminal nature, and that the proceedings to punish for contempt are not civil proceedings, but of a criminal character. But that does not necessarily make a contempt an "offense against the laws of the United States," within the meaning of the terms as used in the statute. A contempt is *sui generis*. All courts, independently of statutory provisions, have an inherent power to punish for contempts. Such power is absolutely necessary to their existence, and the effective exercise of their jurisdiction and the performance of their functions. Bouvier defines "offense:" "The doing that which a penal law forbids to be done, or omitting what it commands; in this sense it is nearly synonymous with crime. In a more confined sense it may be considered as having the same meaning as a misdemeanor, but it differs from it in this, that it is not indictable, but punishable summarily by forfeiture of a penalty." It is in the larger sense of a crime, or misdemeanor, defined and expressly made a specific offense by the statute providing a general system of criminal law, indictable, and to be tried, and a conviction had by a jury, that the term is used in this statute. All offenses against the United States are statutory. And the party entitled to credits is one convicted of an offense against the laws of the United States—that is to say, convicted by a jury upon indictment, or information, of an act that is expressly made an offense by the statute—an offense under the general Criminal Code, or system of criminal law of the state. If this is not the correct view, then no judgment could be ren-

dered for a contempt under the constitution without a trial and conviction by a jury. Article 3, § 2, of the constitution provides that "the trial of all crimes, except in case of impeachment, shall be by jury." And article 6 of the amendments provides that—

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law; and to be informed of the nature and cause of the accusation, to be confronted with the witness against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

Nobody has ever claimed, so far as we are aware, that a party is entitled to a trial by jury in a proceeding for contempt. In this case the judgment was rendered summarily by the court upon its own observation of what took place before it and of its own motion, without any witnesses at all, or any indictment, information, or written complaint, and without the aid or intervention of counsel, and the judgment has been sustained by the supreme court. Some of the acts performed, it is true, constitute specific offenses against the general criminal statutes of the United States for which the prisoner may yet be indicted, tried, convicted, and punished. And indictments are, in fact, pending for those statutory offenses. Should the prisoner be convicted and imprisoned for those offenses he would undoubtedly be entitled to any credits that might be allowed to parties in his condition, "convicted of an offense against the laws of the United States." A party may be imprisoned for a contempt until he shall perform some act required by the court, and such imprisonment of a contumacious party might extend through years—even during life. How could any rule of credits be applied to such a case? Yet, if the statute covers any contempt, as being an offense, it must cover all contempts. Summary contempt proceedings are absolutely necessary to enable a court to protect its own dignity and even preserve its existence; and, to enable it to effectively discharge its proper functions, the proceeding must be at all times under the control of the courts. The proceedings as before stated are *sui generis*, especially provided for in separate acts, and are not intended to be included in the ordinary general provisions embraced within the Criminal Code, or system, within which the party is entitled to all the guaranties provided by the constitution. We are of opinion that the party undergoing imprisonment is not "a prisoner convicted of an offense against the laws of the United States," within the meaning of the statute allowing credits for good behavior.

2. But if this were an offense against the United States within the meaning of the act, although we think it is not, the credits could not be allowed for the following reasons. The act under which the prisoner claims to be entitled to five days' credit for each month—and it is the only act providing for such credits—is wholly inapplicable to this case. The act itself, in terms, limits its application to a "state or territory, which has no system of commutations for its own prisoners." 1 Supp.

Rev. St. p. 184, § 1, (18 St. p. 479.)   But the state of California has a "system of commutation for its own prisoners." In *U. S.* v. *Schroeder*, 14 Blatchf. 345, the prisoner had been regularly convicted for an offense and sentenced to be imprisoned for 12 months.   After serving his term, less credits claimed under this same act of congress of 1875, he applied to the court for his discharge, and the court, in deciding the case, said:

"An examination of the terms of the act of March 3, 1875, shows, that the deduction there provided for can be allowed only to persons confined in a state which has no system of commutation for its own prisoners.   The state of New York has a system of commutation for its own prisoners, (Laws 1863, c. 415; and Laws 1864, c. 321,) and, therefore, the deduction of five days per month prescribed by the act of 1875, cannot be allowed.   The fact that the state system of commutation does not allow any deduction to prisoners confined in jail does not affect the question.   There is still a state system of commutation, and the fact of the existence of such a system, takes the case out of the scope of the act of 1875, without regard to the particular provisions of that system."

We fully concur in this construction of the act.   It admits of no other. So California has a system of commutations for its own prisoners.   And "the fact of the existence of such a system, also, takes the case out of the scope of the act of 1875, without regard to the particular provisions of the system."

3. The only other provision of an act of congress under which credits can be properly claimed is found in section 5544, Rev. St., and is as follows:

"In other cases, all prisoners now or hereafter confined in the jails or penitentiaries of any state for offenses against the United States, shall be entitled to the same rule of credits for good behavior applicable to other prisoners in the same jail or penitentiary."

The only system of commutations for the state of California is found in "An act to define, regulate, and govern the state-prison of California" passed in 1880, as amended by the act of March 14, 1881.   The provisions of that act relate only to state-prisons, their officers and duties, and to the convicts therein confined, their government, discipline, rights, etc.   They have no application to county jails, or to prisoners therein confined.   The system does not include credits for minor offenders confined for short periods of time in county jails or otherwise.   The provisions, therefore, do not reach this case.

4. Again, if the system included prisoners confined in county jails they still fall short of covering the case now in hand.   The provision is that those entitled to credits "shall be allowed from his term, instead and in lieu of the credits heretofore allowed by law, a deduction of two months in each of the first two years, four months in each of the next two years, and five months in each of the remaining years of said term." Now, there are no credits here at all for months, or fractions of a year, or of a month, or for days.   The shortest term for which any credits are allowed is one year.   Mr. Terry was sentenced for six months only. The time is insufficient to entitle him to any credits under the sttae sys-

tem. For each and all of these reasons, we are fully satisfied that the prisoner is not entitled to any credits whatever, and it is so adjudged. And the sheriff of Alameda county is adjudged and directed to hold the prisoner in confinement for the full term specified in the judgment for contempt, without any deductions or credits.